**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CINDY L. S.,[1]**

      **Plaintiff,**

      **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

                    **Civil Action 2:22-cv-382
                    Judge James L. Graham
                    Magistrate Judge Chelsey M. Vascura**

## REPORT AND RECOMMENDATION

Plaintiff, Cindy L. S., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.     BACKGROUND

Plaintiff protectively filed her SSI application in November 2018, alleging that she had

been disabled since September 22, 2018. (R. 158, 291.) Plaintiff's application was denied initially

(R. 204–19, 220), and on reconsideration (R. 221–32, 233). A telephonic hearing was held on

August 18, 2020, before an Administrative Law Judge ("ALJ") (R. 177–203) who subsequently

issued a non-disability determination on October 16, 2020 (R. 155–76). That determination

became final when the Appeals Council denied Plaintiff's request for review on November 29,

2021 (R. 1–7).

Plaintiff seeks judicial review of that final determination. She alleges that remand is

warranted for two reasons. First, Plaintiff alleges that the ALJ erred by failing to incorporate into

her residual functional capacity ("RFC")[2] a limitation that she was required to elevate her legs

when seated. (Pl.'s Statement of Errors 13–14, ECF No. 9.) Second, Plaintiff alleges that remand

is warranted because the ALJ erred when analyzing opinion evidence and prior administrative

findings. (*Id*. at 14–16.) In particular, Plaintiff alleges that the ALJ erred by omitting from her

RFC a limitation to one- and two-step job instructions despite finding persuasive a medical

opinion and a prior administrative finding that both included that limitation. (*Id*.) Defendant

contends that remand is not warranted. (Df.'s Memo. in Opp., ECF No. 4–13.) The undersigned

agrees.

## II.     THE ALJ'S DECISION

On October 16, 2020, the ALJ issued the unfavorable determination. (R. 155–76.) At step

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20
C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

one on the sequential evaluation process, [3] the ALJ found that Plaintiff had not been engaged in

substantial gainful activity since her November 28, 2018 application date. (R. 160.) At step two,

the ALJ found that Plaintiff had the following severe impairments: status post right knee surgery;

status post left foot fracture/dislocation; obesity; venous insufficiency and varicose veins

bilaterally; anxiety; attention deficit disorder (ADD); dysthymic disorder; borderline intellectual

functioning; and asthma. (R. 161.) At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

> Before proceeding to step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) subject to the following limitations: occasionally kneeling; frequent crouching or crawling; occasional exposure to humidity and extreme heat

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?

> 2. Does the claimant suffer from one or more severe impairments?

> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

and cold; occasional exposure to concentrated irritants, such as dust, odors, fumes, and other pulmonary irritants; no exposure to workplace hazards, such as unprotected heights or dangerous, moving, mechanical parts; simple, routine, repetitive tasks but not at production rate pace, such as one has with assembly line work; and tolerating occasional changes in duties and work settings.

(R. 163.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (R. 170.) At step five, the ALJ relied on testimony from a Vocational Expert to find that in light of her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as furniture rental clerk, information clerk, and storage rental clerk. (R. 171.) The ALJ, therefore, concluded that Plaintiff was not disabled from November 28, 2018, through the date of her determination. (R. 172.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that

finding 'even if there is substantial evidence in the record that would have supported an opposite

conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109

F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial  evidence

standard, "a decision of the Commissioner will not be upheld where the SSA fails to  follow its

own regulations and where that error prejudices a claimant on the merits or deprives  the claimant

of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.    ANALYSIS

### A.    The Leg Elevation Limitation

As previously explained, Plaintiff asserts that the ALJ erred by failing to incorporate into

her RFC a limitation that she needed to elevate her legs while sitting. (Pl.'s Statement of Errors

13–14, ECF No. 9.) The undersigned does not so find.

The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§

404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's

RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18,

2010). When considering the medical evidence and assessing an RFC, "ALJs must not succumb

to the temptation to play doctor and make their own independent medical findings." *Simpson v.

Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d

966, 970 (7th Cir. 1996)); *see also Isaacs v. Astrue*, No. 1:08–CV–00828, 2009 WL 3672060, at

*10 (S.D. Ohio Nov. 4, 2009) (holding that an "ALJ may not interpret raw medical data in

functional terms") (internal quotations omitted).

An ALJ is required to explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

Here, the ALJ determined that Plaintiff's venous insufficiency and bilateral varicose veins constituted severe impairments. (R. 161.) And when assessing Plaintiff's RFC, the ALJ wrote as follows: "She has ongoing swelling in her legs but was counseled on conservative management only. Accordingly, the undersigned finds that the claimant retains the residual functional capacity for light work." (R. 167.)

The undersigned finds that the ALJ did not err by failing to include a leg elevation limitation in Plaintiff's RFC. First, no opinion or administrative finding in the record contains such a limitation. Moreover, the record supports the ALJ's explanation that Plaintiff received only conservative care for her venous insufficiency and bilateral varicose veins.

On September 16, 2019, Plaintiff complained of swelling in her legs. (R. 551.) On that day, and on September 19, and October 21, 2019, examinations found that she had +1 pedal pitting edema. (R. 551, 579, 549.) Plaintiff was assessed with bilateral leg edema. (R. 552, 580, 550.) Plaintiff was counseled on conservative management for venous insufficiency, including elevating her legs when sitting, weight reduction, and wearing graduated compression stockings. (R. 552, 580.)

6

On December 12, 2019, a venous insufficiency report noted that although there was no evidence that Plaintiff had DVT in her bilateral lower extremities, there was evidence of significant reflux in the superficial veins of her lower extremities. (R. 599.) On December 16, 2019, a treatment provider noted that Plaintiff continued to have swelling in her legs but that she had not been wearing compression stockings. (R. 547.) An examination that day, and on April 1, 2020, again found that Plaintiff had +1 pedal pitting edema. (R. 547, 543.) Plaintiff was again counseled on conservative management for venous insufficiency including elevating her legs when sitting, weight reduction, and wearing graduated compression stockings. (R. 548, 544.)

But on February 4, and April 14, 2020, Plaintiff denied swelling in her legs. (R. 560, 558.) Examinations that day found that there was no evidence of extremity clubbing or dependent distal edema, that Plaintiff did not have varicose veins, and that her peripheral pulses were equal and bilaterally palpable. (R. 561, 559.) Plaintiff was advised to follow a regular exercise program and monitor her weight. (*Id*.) Likewise, on May 14, 2020, and June 29, 2020, Plaintiff reported that she was negative for swelling in her legs. (R. 556, 605.) Plaintiff was advised to follow a regular exercise plan and monitor her weight. (R. 559, 557.)

In short, the record reflects that Plaintiff was regularly counseled on conservative management for her leg swelling. The record also reflects that Plaintiff's leg swelling appeared to resolve. Indeed, records submitted by Plaintiff to the Appeals Council that relate to the same period reflect that Plaintiff continued to deny edema (R. 145, 143, 45), and that examinations found that she had no edema, clubbing, or cyanosis in her lower limbs (R. 146, 46). Accordingly, the undersigned finds that although the record could have supported the inclusion of a leg elevation limitation in Plaintiff's RFC, on this record, the ALJ did not commit reversible error by omitting one. Therefore, Plaintiff's first contention of error lacks merit.

**B.**      **The One- and Two-Step Instruction Limitation**

As also previously explained, Plaintiff asserts that the ALJ committed reversible error

when analyzing medical opinion evidence and prior administrative findings. (Pl.'s Statement of

Errors 19–21, ECF No. 14–16.) Specifically, Plaintiff alleges that the ALJ erred by failing to

incorporate into her RFC a limitation to tasks involving one- and two-step instructions even

though the ALJ found persuasive a medical opinion and administrative finding that both endorsed

such a limitation. Defendant asserts that there was no error, but to the extent there was, it was

harmless. The undersigned agrees that any error was harmless.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's

case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five different

categories of evidence: (1) objective medical evidence, (2) medical opinions,

(3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative

medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)-(5).

With regard to two of these categories—medical opinions and prior administrative

findings—an ALJ is not required to "defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s) or prior administrative finding(s) including those

from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when

evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must

consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with

the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical

source has familiarity with the other evidence in the claim or an understanding of [the SSA's]

disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5);

---

[4] Because Plaintiff's application was filed in 2018 (R. 291–96), her application is governed by
regulations applicable to applications filed after March 27, 2017.

416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . . " §§ 404.1520c(b)(3); 416.920c(b)(3).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

Here, the ALJ summarized the findings from psychological consultative examiner Dr. Miller. The ALJ wrote:

> As discussed above, Dr. Miller performed a consultative psychological evaluation on behalf of the DDD. Based on that evaluation, Dr. Miller opined that the claimant had adequate ability to understand, remember, and carry out one and two-step instructions, at an entry level.

(R. 169–70.) The ALJ then explained that the state agency reviewer, Dr. Dietz, had adopted Dr. Miller's findings. The ALJ wrote:

> Further, David Dietz, PhD. Reviewed the evidence on behalf of the DDD on February 9, 2019. Dr. Dietz opined that the claimant's ability to understand, remember, and carry out one and two-step job instructions appeared to be adequate, at an entry level . . . . This assessment is an adoption of the findings of the consultative examiner.

The ALJ then explained that finding and opinion from Drs. Dietz and Miller were persuasive. The ALJ wrote:

9

> Although the findings of Dr. Dietz and Dr. Miller are somewhat vague, the undersigned finds their opinions to be persuasive, as they are generally consistent with objective findings upon examination and because there are no other significant mental status examination findings to contradict the findings of the consultative examiner.

(R. 170.)

Plaintiff does not challenge the ALJ's determination that this evidence was persuasive. Instead, Plaintiff alleges that given this determination, the ALJ was required to incorporate the one- and two-step job instructions limitation into her RFC or more fully explain why it was omitted. Defendant, however, notes that the ALJ included a limitation in Plaintiff's RFC for simple, routine, and repetitive tasks, but not at a production pace, such as one with assembly line work, and suggests that this accommodated the one- and two-step instruction limitation. Defendant further urges that any error was harmless.

It is unclear if the limitation to simple, routine, and repetitive tasks accommodates the one- and two step-instruction limitation. But the undersigned agrees that any error was harmless. At the hearing on October 16, 2020, the VE testified that a hypothetical individual with the same RFC that was ultimately assessed for Plaintiff would be able to perform work as a furniture rental clerk,[5] an information clerk,[6] and a storage rental clerk.[7] (R. 194.) The VE further testified that in the national economy, there were 60,000 furniture rental clerk jobs, 49,000 information clerk jobs, and 71,000 storage rental clerk jobs.

The VE also testified that a hypothetical individual with the same RFC that was ultimately assessed for Plaintiff, but who was additionally limited to no more than four hours of standing or walking during the day would be able to perform several sedentary jobs. (R. 194.) Specifically,

---

[5] DOT # 295.357–018.
[6] DOT # 237.367–018.
[7] DOT # 295.367–026.

the VE testified that person would be able to perform work as a document preparer,[8] address clerk,[9] or inspector.[10] (R. 194–95.) The VE further testified that in the national economy there were 19,000 document preparer jobs, 8,000 address clerk jobs, and 9,000 inspector jobs. (*Id*.) The VE additionally testified that there were 60,000 jobs in the national economy that could be performed by an individual with this more limited RFC. (R. 195.)

Upon cross examination, the VE testified that there were a significant number of jobs in the national economy that could be performed by a person with the more limited RFC who also had a one- and two-step instruction restriction, such as the one at issue here. (R. 196–98.) Specifically, the VE testified that there would be 30,000 jobs in the national economy that could be performed by such a person. (*Id*.) Therefore, Defendant correctly contends, that even if the ALJ had included a one- and two-step task limitation into Plaintiff's RFC, the VE's testimony establishes that there were significant numbers of jobs in the national economy that Plaintiff could have performed.

The undersigned agrees that 30,000 jobs constitutes a significant number of jobs. Certainly, the Sixth Circuit Court of Appeals has found that far fewer jobs constituted a significant number of jobs. *See, e.g., Taskila v. Comm'r Soc. Sec.*, 819 F.3d 902, 904 (6th Cir. 2016) (finding that 6000 "jobs in the United States fits comfortably within what this Court and others have deemed 'significant.'"); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 579 (6th Cir. 2009) (2000 jobs were significant.) This Court has also found that fewer jobs were significant. *See, e.g., Riechman v. Comm'r of Soc. Sec.*, No. 1:20–cv–494, 2021 WL 3856014, at

---

[8] DOT #249.587–018.
[9] DOT # 209.587-010.
[10] DOT # 726.684–110.

* 12 (S.D. Ohio August 30, 2021) (20,000 jobs significant). Accordingly, on this record, the undersigned finds that Plaintiff's second contention of error lacks merit.

## V.      RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination.

## VI.      PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE